UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT J. THOMAS, )<br>)<br>PETITIONER, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>RESPONDENT. ) | CAUSE NO. 3:12-CV-555 RM<br>(ARISING OUT OF 3:09-CR-134 RM) |

OPINION and ORDER

When Robert J. Thomas walked into court on March 10, 2010, he had an attorney he had hired, a plea agreement, and a trial date six days away. He walked out of the courtroom with his attorney and his trial date. As the change of plea dialogue neared its end, the court asked Mr. Thomas, "Do you still want to plead guilty, sir?" Mr. Thomas responded: "I really don't want to be plead guilty, to be honest with you. I don't feel like all - - I don't feel like I can be proven beyond a reasonable doubt by all those essentials or whatever you have."

When Mr. Thomas walked into court for trial six days later, it turned out that he had more lawyers, and a firmer trial date, than he thought he had. Mr. Thomas presented a letter to attorney Timothy P. McLaughlin, who had represented Mr. Thomas since the previous October 2, discharging Mr. McLaughlin as his attorney. Mr. Thomas's family brought attorney Richard M. Adams, a Birmingham, Alabama attorney whom the family had hired to represent Mr. Thomas. But Mr. Adams would need time to prepare for trial, so

Mr. McLaughlin moved for a 60-day continuance when he moved to withdraw his appearance as counsel for Mr. Thomas. The court analyzed the seven-factor test laid out for eve (or morn) of trial continuance motions in United States v. Miller, 327 F.3d 598, 601 (7th Cir. 2003), and denied the motion for continuance.

After a recess to allow Mr. Thomas to discuss with his myriad counsel how to proceed, Mr. McLaughlin said he would remain as Mr. Adams's co-counsel or second chair (implicitly withdrawing the motion to withdraw he made less than an hour before), but asked for a recess until the next morning to allow the attorneys to work out how they would proceed. The court granted that request.

Trial resumed the next day. After three days of evidence, the jury disagreed with Mr. Thomas's earlier evaluation of the government's ability to prove its case beyond a reasonable doubt. The jury found Mr. Thomas guilty on all five counts: two counts of possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), one count of possession of a firearm while a user of a controlled substance, 18 U.S.C. § 922(g)(3), one count of possession of a firearm after conviction for a felony, 18 U.S.C. § 922(g)(1), and one count of possessing a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c).

The court eventually sentenced Mr. Thomas to an aggregate sentence of 240 months' imprisonment, consisting of 180 months on Count 1 (with

concurrent 51-month sentences on each of Counts 2-4) to be followed by 60 months on Count 5. An eight-year supervised release term was to follow Mr. Thomas's release from custody.

Mr. Thomas appealed, and attorney Lu Han of Chicago agreed to represent him on the appeal. The only appellate issue Mr. Thomas presented was the claim that his conviction on Count 3 — possession of a firearm while a user of illegal controlled substances — ran afoul of the Second Amendment as read in District of Columbia v. Heller, 554 U.S. 570, 628-629 (2008). The court of appeals rejected that argument, but the government pointed out that Mr. Thomas had been impermissibly convicted of violating two sections of the same law with the same conduct. Because user-in-possession and felon-in-possession both are criminalized by 18 U.S.C. § 922(g), the same conduct can't constitute two separate crimes. The court of appeals remanded the case "with instructions to **VACATE** the sentence on one of the firearm possession counts and merge the two convictions," and affirmed the conviction in all other respects. United States v. Thomas, No. 10-2996, 426 F. App'x 459, 461 (7th Cir. 2011) (emphasis in original).

Upon receiving the mandate from the court of appeals, this court vacated the conviction and sentence on Count 4, the felon-in-possession count. No hearing was held because the court of appeals' instruction was very clear and the amendment to the judgment didn't affect the sentence because the 51-month sentence on Count 4 had been concurrent with the 180-month sentence

on Count 1. Mr. Thomas ventured an appeal from that ruling, but the court of appeals dismissed the appeal for untimeliness.

This brings us to the matter now before the court: Mr. Thomas's petition under 28 U.S.C. § 2255, in which he raises nine claims (plus a later tenth) of ineffective assistance of counsel or prosecutorial misconduct. In each of the claims, Mr. Thomas either misunderstands the law or remembers the events in this court incorrectly.

The court addresses the claims in the order in which the errors are alleged to have been committed. To prove ineffective assistance of counsel, a petitioner must persuade the court that (1) his lawyer made errors, and the errors were so serious that the lawyer can't be said to have been providing the petitioner with the counsel the Constitution guarantees to everyone, and (2) as a result, the petitioner's defense was prejudiced to the point he was deprived of a trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984). This is no small task. *See* Yu Tian Li v. United States, 648 F.3d 524, 527-528 (7th Cir. 2011) ("To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, our review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

A.

Two of Mr. Thomas's claims posit that his change of plea fizzled out because of his attorney — more particularly, his first attorney, Mr. McLaughlin. Mr. Thomas says Mr. McLaughlin fumbled the ball at two points: first, that when discussing the plea offer with Mr. Thomas, Mr. McLaughlin assured him that the federal sentence would run concurrently with his state sentence, and that was the only reason Mr. Thomas agreed to plead guilty; and second, after Mr. Thomas signed the plea agreement, Mr. McLaughlin changed the plea agreement so the state and federal sentences would run consecutively. This claim falls short at the second part of the two-part test for ineffective assistance of counsel: Mr. Thomas can't show any prejudice from Mr. McLaughlin's alleged actions with respect to the plea agreement.

The plea agreement that was filed with the court contained Mr. Thomas's agreement that his federal sentence would be consecutive to his state sentence, and Mr. Thomas told the court, while under oath, that he had read the plea agreement before signing it. The court asked the attorneys to outline the terms of the plea agreement as they understood it, and the prosecutor said Mr. Thomas had agreed to admit that he violated the conditions of his state home detention sentence and serve the resulting sentence consecutively to the federal sentence; Mr. Thomas told the court that's how he understood things, too. The court then went through various terms of the plea agreement with Mr. Thomas, including the provision that both sides agreed the federal sentence

would be consecutive to the state sentence; when the court asked if that was correct, Mr. Thomas responded, "Yeah, I understand. Yeah. Now, I do, yes."

At the beginning of the change of plea hearing, the court told Mr. Thomas that he was free to ask for time to confer with his attorney before answering any question. Mr. Thomas made one such request during the hearing when the court erroneously described the handgun as a nine millimeter; after Mr. Thomas and Mr. McLaughlin conferred, Mr. McLaughlin said it was a .40 caliber handgun, not a nine millimeter. Mr. Thomas never asked to speak with Mr. McLaughlin about the consecutive sentencing provision during the court proceedings.

Guilty plea proceedings are solemn events, and courts can accept as true what the defendant tells the court during those proceedings. United States v. Gonzalez, ___ F.3d ___, ___, 2014 WL 4251764, at *6 (7th Cir. Aug. 29, 2014). Mr. Thomas twice told the court directly that he understood the consecutive sentencing provision and indirectly told the court a third time when he said he had read the plea agreement before he signed it. So even assuming that Mr. Thomas was hoodwinked by some sort of bait-and-switch that a constitution-quality lawyer should have protected him from, Mr. Thomas knew by the time of the change of plea hearing that his plea agreement called for consecutive sentencing. Mr. Thomas wasn't prejudiced by whatever Mr. McLaughlin did or should have done before that.

In addition, Mr. Thomas withdrew his guilty plea during the change of plea hearing. The court never accepted the guilty plea. Mr. Thomas's conviction and sentence flowed from a jury verdict, not a guilty plea.

Mr. Thomas appears to think the court had it in for him after he withdrew his guilty plea — maybe other courts, too, since he says, "Prejudice ensued at every subsequent level." But he points to nothing to support that belief. Unsupported allegations aren't enough to show the prejudice required for a finding of ineffective assistance of counsel. <u>Aleman v. United States</u>, 878 F.2d 1009, 1012 (7th Cir. 2009).

The court doesn't need to decide whether Mr. McLaughlin did what Mr. Thomas alleges, or whether such a performance would fall below what the constitution requires. No matter how those questions might be answered, Mr. Thomas didn't suffer any prejudice from it.

B.

That brings the discussion to the trial. Mr. Thomas asserts that the court erred by not giving his (second) attorney time to prepare for trial, that his trial attorneys were ineffective because they didn't investigate the coerced nature of his father's statement of facts in his father's own plea agreement and didn't use the difference in those statements to prove Mr. Thomas's innocence, and that the government engaged in outrageous misconduct in using the father's plea agreement statements.

Mr. Thomas was convicted of operating a reasonably sophisticated marijuana grow operation with his father. His father (also Robert Thomas, so this order simply refers to him as "the father") was a co-defendant in the indictment and was the first to enter into a plea agreement. In that agreement, the father said he and Mr. Thomas operated the grow operation together (and the government had considerable evidence to support that). Mr. Thomas contends that his father was "coerced" into making that statement in the plea agreement in the sense that the father's lawyer made him do it.

The government called the father as a witness at Mr. Thomas's trial. The father testified that the grow operation was his and his alone. He testified that his son provided no help in the operation other than to buy about two ounces of marijuana a week from the father. The government confronted the father with the statements in the father's plea agreement, and the father testified that they weren't true. The father said he only agreed to those statements because his lawyer told him Mr. Thomas had said the same things to the authorities when he was arrested. In final argument, Mr. Adams gave the jury reasons to believe what the father said on the witness stand, rather than what he (the father) said in the plea agreement the government had drafted.

Mr. Thomas says that not only was Mr. Adams unprepared to try the case on the morning of trial, so was Mr. McLaughlin. Mr. Thomas says Mr. McLaughlin hadn't investigated the case adequately. But Mr. Thomas goes beyond that conclusory statement only insofar as it relates to the backstory on

the factual basis for his father's plea agreement. He identifies no other witnesses, exhibits, or impeachment material that further investigation would have uncovered. It's not enough to say counsel should have looked harder or longer; a petitioner under § 2255 has to point out what the investigation missed. Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2004).

Mr. Thomas says that if his attorneys had investigated better, they would have learned that the statements in his father's plea agreement were "coerced." Assuming the trial attorneys didn't know that, they certainly knew it by the time Mr. Adams rose to cross-examine the father. During direct examination, the prosecutor confronted the father with the father's plea agreement and went through the facts that were inconsistent with the father's trial testimony. When the prosecutor asked the father if he read and signed the plea agreement, the father answered, "After I talked to Mr. Korpal about that. I was very — I was very uneasy about Number 6 there because the fact is I talked to Mr. Korpal. And when I signed that, he goes, 'Don't worry about that. That's what your son said.' He goes, 'don't worry about that.'" As the court understands Mr. Thomas's submissions on this claim, that's precisely what further investigation would have shown: that his father signed the plea agreement reluctantly at his attorney's urging.

Nor did that testimony come at the end of the direct examination. As the questioning on the plea agreement and change of plea dialogue continued, the court took a recess to locate the father's attorney so the father could consult

with him about exposure to perjury charges. Assuming that neither of Mr. Thomas's attorneys knew of the "coercion" by counsel after sitting next to Mr. Thomas for three days, or sitting in the courtroom with other family members for three days while knowing the father was listed as a government witness, they knew well before they questioned the father. Mr. Adams opened his cross-examination by asking the father about his long-term marijuana use and its effects on his memory; toward the end of the cross-examination, Mr. Adams noted that the government had prepared the plea agreement.

Mr. Thomas doesn't suggest what his attorneys could have done better, and the court can't think of anything. The father made the previous statements; the attorneys knew that and couldn't change it. While the government often can't use statements government agents "coerced" out of the declarant, a defense attorney is independent of the government. What goes on between the defense attorney and his client (the father, for purposes of the advice given or "coercion" applied) is secret unless the client reveals it. Because of a defense counsel's independence, defense counsel's "coercion" almost never warrants suppression of the government's evidence. So, even if Mr. Thomas's attorneys didn't know the story until the father told it on direct examination, they couldn't have moved to suppress the prior statements had they known earlier.

The father's pretrial statements to investigators and plea agreement (which actually were consistent with what Mr. Thomas had told the

investigators at the time of his arrest, by the way) put Mr. Thomas's defense in a tough position. His lawyers couldn't make the earlier statements disappear or make them inadmissible at trial. The best they could do was to show the jury why it should give more weight to what the father said at trial than to what he said before — which is what Mr. Adams (and the father) tried to do.

There was nothing improper, much less anything egregious, about the prosecutor's use of the father's statement. Mr. Thomas is right that the government can't knowingly present false testimony, United States v. Curescu, 674 F.3d 735, 739 (7th Cir. 2012), but Mr. Thomas has given the court no reason to think the government knew the father's prior statements were false. All of the prior statements were consistent with what Mr. Thomas himself had told authorities, all were consistent with the physical evidence, and the father had made or confirmed most of the statements while under oath at his own change of plea proceeding.

Mr. Thomas isn't entitled to relief on any of the claims regarding his father's statements.

C.

The jury returned a verdict of guilty. Mr. Thomas contends that the evidence was insufficient to support the § 924(c) count because the evidence didn't establish that he possessed a firearm in furtherance of interstate commerce. He is wrong.

Mr. Thomas argues that there was no effect on interstate commerce because the gun was found in his residence, which has no impact on interstate commerce. The law doesn't look at where the firearm was found; it looks at the firearm and asks whether the firearm crossed a state or national boundary line. Scarborough v. United States, 431 U.S. 563, 577 (1977). That element is routinely proven in firearms cases tried in federal courts located in Indiana because no guns are manufactured in Indiana; guns must cross a state or national boundary line to get here. That might be why Mr. Thomas and his attorneys stipulated that the firearm had traveled in interstate commerce.

A person has constructive possession of a firearm if he has the ability to control it. United States v. Reed, 744 F.3d 519, 526 (7th Cir. 2014); United States v. Lloyd, 71 F.3d 1256, 1266-1267 (7th Cir. 1995). Mr. Thomas had a loaded semiautomatic handgun under the bed in the room in which he lived and slept, in the home where he kept marijuana for sale and cash proceeds from those sales. He told police that his fingerprints would be on the gun because he had handled it and that either he or his girlfriend had bought it. That's more than enough evidence of constructive possession to support the verdict.

Mr. Thomas raised still another issue in a supplemental filing just before the government's brief was filed. He argues that his sentence was illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000), because a prior conviction for a felony drug crime triggered a mandatory 15-year minimum sentence on Count

1. 21 U.S.C. §§ 841(b)(1)(B) and 851. Mr. Thomas relies on <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), in which the Supreme Court held the facts that increase or trigger a minimum sentence must, if denied by the defendant, be found by a jury rather than a judge. Mr. Thomas would be right if the line of cases running from <u>Apprendi</u> to <u>Alleyne</u> applies to sentencing increases caused by prior criminal convictions. But that's not the law. If a maximum sentence or a minimum sentence is increased because of the extent or nature of the defendant's criminal history, the fact of the prior conviction needn't be proven to a jury. <u>United States v. Cheek</u>, 740 F.3d 440, 453 (7th Cir. 2014). The law doesn't support this claim for relief.

D.

An appeal followed Mr. Thomas's conviction. Attorneys McLaughlin and Adams withdrew their appearances, and the court of appeals appointed Chicago attorney Lu Han to represent Mr. Thomas. As noted at the outset, the only issue Ms. Han raised on appeal was whether the Second Amendment allows a conviction for possessing a firearm as a regular user of controlled substances. The court of appeals ruled for the government on that issue.

Mr. Thomas contends Ms. Han provided ineffective assistance because she didn't raise any of the issues Mr. Thomas raises in his § 2255 petition. The court of appeals has told appellate lawyers to choose issues carefully rather than relying on a barrage of issues; a large number of issues implies that counsel doesn't think any of them are strong enough to prevail on their own.

Dynegy Marketing and Trade v. Multitut Corp., 648 F.3d 506, 513 (7th Cir. 2011). Given that warning, it's doubtful that Ms. Han can be said to have rendered substandard assistance of counsel. In any event, Mr. Thomas wasn't prejudiced by the absence of his extra issues from the appellate brief because this court's consideration of his § 2255 petition shows that none of those extra issues have any merit.

E.

Mr. Thomas's last two claims relate to the events that occurred after the court of appeals affirmed the conviction and ordered this court to vacate one of the two convictions under 18 U.S.C. § 922(g). As was noted earlier, this court complied with that order without a hearing. Mr. Thomas argues that this court erred by not receiving evidence on Mr. Thomas's post-sentence rehabilitation, *see* Pepper v. United States, 131 S. Ct. 1229, 1236 (2011) (court can consider evidence of post-sentence rehabilitation at resentencing), and Ms. Han provided constitutionally deficient assistance when she failed to appeal the new judgment on that ground.

Mr. Thomas misunderstands what the court of appeals ordered and what this court did. He believes what happened after the court of appeals ruled was a "resentencing," at which he was entitled to try to persuade the court to do more than it did. But the court of appeals didn't order a resentencing, and this court didn't conduct one. This is what the court of appeals said: "For the foregoing reasons, we **REMAND** this case to the district court with instructions

to **VACATE** the sentence on one of the firearm possession counts and merge the two convictions. In all other respects, the judgment of the district court is **AFFIRMED**." United States v. Thomas, No. 10-2996, 426 F. App'x 459, 461 (7th Cir. 2011) (emphasis in original). The only discretion the court of appeals left to this court was which of the two § 922(g) convictions (along with its concurrent sentence) to vacate. The court of appeals provided this court with no authority to increase or decrease — whether for post-sentence rehabilitation or any other reason — the original 240-month sentence.

Because this wasn't a resentencing, Mr. Thomas had no right to attend or be heard at a hearing. See FED. R. CRIM. P. 43. And because this wasn't a resentencing that Mr. Thomas had a right to attend and be heard, there was no viable ground for Ms. Han to begin a new appeal or to try to renew the original appeal. There is no merit to these claims about what happened after the court of appeals ruled.

For all these reasons, the court DENIES the petition under 28 U.S.C. § 2255 (Doc. No. 129).

SO ORDERED.

ENTERED: September 15, 2014

/s/ Robert L. Miller, Jr.
Judge
United States District Court